**FARWELL CO., Inc. v. UNITED STATES.**

No. 282–52.

United States Court of Claims.

Sept. 30, 1953.

Paul M. Rhodes, Washington, D. C., for plaintiff. King & King, Washington, D. C., were on the briefs.

Donald D. Webster, Department of Justice, Civil Division, Washington, D. C., with whom was Asst. Atty. Gen. Warren E. Burger, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

This suit was brought by plaintiff, Farwell Company, Inc., to recover from the defendant the sum of $35,184.96 alleged to be due under a contract between the parties. The defendant withheld the $35,184.96 from the amount payable under the contract as a result of a change order which modified the contract so as to permit the plaintiff to install copper tubing in lieu of copper or brass "pipe," and which reduced the estimated contract price by $35,184.96 because of the change permitting the use of copper tubing.

Both the plaintiff and the defendant have moved for summary judgment on the ground that there is no genuine issue as to any material fact and that as a matter of law each is entitled to judgment. Plaintiff contends that it is entitled to summary judgment on the ground that paragraph 45–15 b of the contract specifications, before it was modified by the change order, permitted the use of copper tubing in the construction of the domestic water lines of the contract project, and that the change

order was thus unnecessary and erroneous. The issue presented by its motion is whether or not the phrase "Pipe * * * shall be brass or copper" in paragraph 45–15 b was ambiguous and susceptible of a broad interpretation as to include copper "tubing."

The defendant urges, however, that it is entitled to summary judgment because the contracting officer's decision that plaintiff was obliged to install "pipe" rather than "tubing" in the domestic water lines involved an issue of fact which, when affirmed by the head of the department, became final and conclusive upon the parties. The defendant also argues that if the contracting officer's decision, when affirmed by the head of the department, is not final, issues of fact exist which preclude the granting of the plaintiff's motion for summary judgment.

The facts appearing from the pleadings and contract documents are as follows. Plaintiff entered into a contract, dated February 7, 1948, with the Corps of Engineers for the installation of mechanical work in the Veterans Administration Hospital, Shreveport, Louisiana. The design and preparation of the contract specifications were done by a firm of architects-engineers under a separate contract between it and the defendant. The firm's consulting engineer, in preparing the plumbing specifications (Section 45) used, without change, the Corps of Engineers' standard Guide Specifications, C. E.–300.02, dated April 7, 1947, which forms paragraph 45–15 b of the contract specifications here as follows:

"45–15  *Water Pipe, Fittings, and Connections:*

\*     \*     \*     \*     \*     \*

"b. *Brass or Copper:* Pipe used for domestic hot and cold water, return circulating hot water, and chilled water, except underground pipe 3 inches in diameter and larger, shall be brass or copper. Threaded fittings shall be brass. Threadless fittings for brazing with silver solder will be acceptable, except for

swing joints. The material and dimensions of threadless fittings shall conform to the requirements of Federal Specification WW–p–460."

Although the Corps of Engineers' Guide Specifications 300.02 were amended by the addition of the words "copper tubing will not be acceptable" prior to the issuance of the invitation for bids, neither the firm's consulting engineer nor the plaintiff were informed of this modification and the later addition does not appear in paragraph 45–15 b of the contract specifications.

In the performance of the contract work, plaintiff proceeded to install type B copper tubing for the domestic water lines.[1] On or about December 3, 1948, plaintiff was notified by the architects-engineers to suspend further installation of the copper tubing until the question of the interpretation of paragraph 45–15 b of the specifications could be cleared up.

Subsequent to a conference between the plaintiff and the contracting officer, the plaintiff, on January 10, 1949, communicated to the contracting officer reasons why the contracting officer . should decide that the copper tubing met the requirements of paragraph 45–15 b of the contract specifications. The contracting officer did not decide the question, but submitted the matter to the Chief of Engineers by a letter dated January 10, 1949, wherein he recommended that the use of the copper tubing be accepted under paragraph 45–15 b. In this letter, the contracting officer stated, among other things, that the specification for copper piping as written was somewhat vague and "possible of misinterpretation."

The Chief of Engineers responded by teletype that the use of copper tubing would be permitted to avoid a delay in construction. He also advised that a letter reply would instruct the district engineer to issue a change order to the contract specifications authorizing the use of copper tubing and making an equitable reduction in the contract price.

The letter of instruction was sent, and subsequently the contracting officer issued a change order which modified paragraph 45–15 b of the specifications so as to provide for the use of copper tubing in the contract work instead of copper pipe and which reduced the contract price by $35,184.96.

Plaintiff refused to accept the change order because it felt that copper tubing met the requirements of the specifications as originally written, and it appealed to the head of the department. The Corps of Engineers Claims and Appeals Board, representing the head of the department, interpreted paragraph 45–15 b of the specifications to require the use of copper pipe and not to permit the use of copper tubing, and it consequently affirmed the reduction of the contract price by $35,184.96.

█ We consider first the defendant's contention that the decision of the contracting officer, when affirmed by the head of the department, that the contract specifications required copper pipe rather than tubing, became final under Article 15 of the contract. Article 15 is the standard disputes clause used in Government contracts and it provides that all disputes concerning *questions of fact* arising under the contract should be decided by the contracting officer with appeal to the head of the department whose decision shall be final and conclusive up- · on the parties.

On this issue, it is our conclusion that the interpretation of paragraph 45–15 b of the contract specifications is not a question of fact within the meaning of Article 15, Bell Aircraft Corp. v. United States, 100 F.Supp. 661, 120 Ct.Cl. 398, 462–463; Binghampton Construction Co.

---

1. As to whether this copper tubing was suitable or conformed with the technical requirements of the contract specifications for use in the domestic water lines, the parties disagree. It is also controverted as to whether, prior to the bidding on the contract work here involved, copper tubing was installed by plaintiff on another Government project and was approved and accepted under the same provision as that contained here in para- · graph 45–15 b.

v. United States, 123 Ct.Cl. 804, 839; and that consequently the decision of the head of the department upon this issue did not become final and conclusive upon the parties.

With respect to plaintiff's contention that paragraph 45–15 b of the specifications is ambiguous and capable of being interpreted so as to permit the use of copper "tubing" interchangeably with brass or copper "pipe" in the construction of the domestic water lines involved here, we are not so convinced on the basis of the pleadings and contract documents before us. On its face, paragraph 45–15 b refers only to "pipe" and nowhere is the term "tubing" mentioned. From the context in which the term "pipe" is used, moreover, there is nothing to indicate that it is meant to be synonymous with or inclusive of the term "tubing."

In addition, in examing other parts of the specifications cited by the parties, we are unable to agree that these other parts demonstrate that the term "pipe" in paragraph 45–15 b is either ambiguous or is used in a broad, generic sense so as to include "tubing." Paragraph 45–06, for instance, lists the materials to be used in connection with the installation of the plumbing system in pertinent part as follows:

"45–06  *Materials  and  Equipment:*

\*  \*  \*  \*  \*  \*

"c.  *Brass Pipe:* Brass pipe shall conform to the requirements of Federal Specification WW–P–351, Grade A.

\*  \*  \*  \*  \*  \*

"i.  *Copper Pipe:* Copper pipe shall conform to the requirements of Federal Specification WW–P–377.

While this list includes brass and copper "pipe," nowhere in the list is copper or brass "tubing" contained. The natural inference from this, in our opinion, is that the omission of "tubing" here would seem to indicate that it was not intended that any tubing would be used in the plumbing system, and that the brass or copper "pipe" specified in paragraph 45–15 b meant either "c.  *Brass Pipe*" or "i.  *Copper Pipe*" listed above as materials to be used in the plumbing system.

Likewise, paragraph 45–02 contains a long list of applicable specifications and sets forth "pipe" and "tubing" as separate and distinct items. The definite differentiation made between pipe and tubing in this list, we think, also tends to show that "pipe" and "tubing" were not intended to be interchangeable in paragraph 45–15 b.

Turning to Sections 47 and 61 of the specifications, it is pointed out by plaintiff that the terms "piping," "pipe," and "tubing" are used interchangeably in these sections. Although this is true, it is evident that in both of these sections, "copper tubing" is expressly listed as a material to be used in the performance of the work under these sections. Moreover, the excerpts relied upon by the plaintiff from these sections specifically state that, in the construction of the lines or piping there mentioned, the material to be used "shall be" copper tubing. We thus fail to see how the provisions of these sections can operate to create an ambiguity in paragraph 45–15 b where the term "tubing" does not appear.

Accordingly, on the basis of the pleadings and contract documents before us, we cannot conclude that plaintiff was justified in interpreting paragraph 45–15 b as written to permit the use of copper tubing. There appear to be genuine issues of material fact, however, as to whether the defendant has previously accepted copper tubing under the same specification provision as paragraph 45–15 b and whether copper tubing was suitable or conformed with the technical requirements of the contract specifications.

The intention of the parties is to be gathered from the instrument read in the light of the circumstances existing at the time of the negotiations leading up to its execution. Loftis v. United States, 76 F.Supp. 816, 110 Ct.Cl. 551, 628, and cases there cited. Great care

is to be exercised in granting motions for summary judgment, Deohler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135; and we do not think plaintiff has shown it is entitled to judgment as a matter of law.

Both the plaintiff's and the defendant's motions for summary judgment are denied, and the case is referred to a commissioner of this court for further proceedings.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.