FARWELL COMPANY, Inc.,

v.

The UNITED STATES.

No. 282-52.

United States Court of Claims.

March 6, 1957.

Paul M. Rhodes, Washington, D. C., for plaintiff.

Kathryn H. Baldwin, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This suit was brought by plaintiff Farwell Company, Inc., to recover from defendant the sum of $35,184.96, which

amount was withheld from the amount payable under a contract as the result of a change order which modified the contract so as to permit plaintiff to install copper tubing in lieu of "copper or brass pipe" specified in the contract. The tubing was admittedly not as expensive as the pipe.

The facts necessary to this decision are briefly these: On February 7, 1948, plaintiff entered into a contract with defendant's Corps of Engineers under which plaintiff was to furnish the materials and perform the work for installation of all mechanical work in the main hospital and the boiler house of the Veterans' Administration Hospital, Shreveport, Louisiana, in accordance with the contract documents, plans, and specifications. The specifications were drawn up by a firm of architects-engineers under a separate contract between it and the defendant. The firm's consulting engineer, in preparing the plumbing specifications, used without change, the Corps of Engineers' Standard Guide Specifications, C. E.—300.02, dated April 7, 1947, which forms paragraph 45–15b of the contract specifications and is as follows:

"b. *Brass or Copper:* Pipe used for domestic hot and cold water, return circulating hot water, and chilled water, except underground pipe 3 inches in diameter and larger, shall be brass or copper. Threaded fittings shall be brass. Threadless fittings for brazing with silver solder will be acceptable, except for swing joints. The material and dimensions of threadless fittings shall conform to the requirements of Federal Specifications WW–p–460."

Although the Corps of Engineers' Standard Guide Specifications 300.02 were amended by the addition of the words "copper tubing will not be acceptable" prior to the issuance of the invitation for bids on the job here in question, neither the firm's consulting engineer nor the plaintiff were informed of this modification and the later addition does not appear in paragraph 45–15b of the contract specifications.

Plaintiff entered on the construction work using type B copper tubing instead of "brass or copper pipe" as called for in the specifications. On or about December 3, 1948, the architects-engineers directed plaintiff to suspend further installation of type B copper tubing pending an interpretation of the specifications. It was thereafter determined that the type B copper tubing did not comply with the specifications, but to avoid delay, plaintiff was permitted to continue with the installation of said copper tubing. At that time a change order was issued, together with findings of fact, modifying paragraph 45–15b to permit the use of copper tubing and making an equitable adjustment in the contract price of $35,184.96, the difference in the market price of copper pipe and type B copper tubing.

Plaintiff contends that paragraph 45–15b of the contract specifications is ambiguous where it specifies brass or copper "pipe" and threaded fittings and also permits the use of threadless fittings; that the term "pipe" in specifications and in trade usage includes "tubing" and that the two terms do not have technically exclusive meanings; that it bid on type B copper tubing; that such tubing was satisfactory for the job; and that the Government was not justified in reducing the contract price when plaintiff was permitted to continue installing tubing.

Defendant in its brief recites that the defendant is not contending in this case that type B copper tubing would not give satisfactory results. The Government concedes that it permitted the use of the tubing and that it is adequate for the job but it contends it permitted its use only to expedite the job and feels that an adjustment downward in the contract price should be made because of the lesser expense entailed by the contractor in obtaining copper tubing. The Government, contrary to plaintiff's contention, argues that the use of the term "pipe" in the specifications does not within the ordinary trade usage also mean "tubing".

The question of whether or not "pipe" also means "tubing" was decided by this court when the case was previously before it on cross-motions for summary judgment, Farwell Co., Inc., v. United States, 115 F.Supp. 477, 126 Ct.Cl. 317, wherein we held that plaintiff was not justified in interpreting paragraph 45–15b as written to permit the use of copper tubing. However, the court at that time found that there were genuine issues of material fact as to (1) whether the defendant has previously accepted copper tubing under the same specification provision as paragraph 45–15b, and (2) whether copper tubing was suitable or conformed with the technical requirements of the contract specifications. Thus, the case was remanded to the Commissioner for further proceedings.

Trial on the above issues was had and in support of the first issue above plaintiff claims that shortly prior to bidding on the contract here in suit it performed the mechanical work on the Veterans' Administration Hospital, Big Springs, Texas, as a subcontractor, and that type B copper tubing was installed, approved, accepted, and paid for under the same specification provision as paragraph 45–15b here in question.

■ This contention of plaintiff is in error since the bid on the Big Springs, Texas, job was qualified with a statement that it was based on tubing and the bid was accepted on that basis. Plaintiff, in arguing against defendant's contention that the bid was qualified to the extent hereinbefore noted, states in its reply brief that " * * * there is not one scrap of evidence in the record concerning the Big Springs Hospital or any 'qualification' of the bid on that job." In response to this statement, we simply point to finding 12, which is taken from an exhibit introduced by plaintiff, and to finding 13. The statements contained in the contracting officer's memorandum, and the decision of the Claims and Appeals Board therein quoted, indicate without question that the bid on the Big Springs project was *qualified* to the extent that it permitted the use of copper

tubing under a specification similar to 45–15b of the contract in question in the suit now before us. Moreover, this issue was completely abandoned by plaintiff on trial of the case; therefore, any further discussion is unnecessary.

■ As to the second issue, plaintiff claims that the copper tubing was suitable and conformed with the technical requirements of the contract specifications, and its use should, therefore, be permitted without any reduction in the contract price.

The Government has stated in its brief that it does not contend that the copper tubing was not suitable. It does say that it did not conform with the requirements of the contract specifications, and quite obviously it did not. It is of no concern to plaintiff why the Government specified brass or copper "pipe" instead of "tubing," and it was not within plaintiff's province to substitute its judgment for that of the Government by deciding that tubing was satisfactory when pipe was specified. The Government may have had many reasons for requiring pipe instead of tubing, but in any event the specifications called for pipe and the Government had a right to expect that pipe would be used. In other words, why have a contract if either party could change the terms thereof to suit his particular whim. The easier method would be to say "just build us a good building," then leave it up to the court in the inevitable ensuing lawsuit to determine whether the materials used were suitable. This is just what contracts are meant to prevent and an added reason why they could be construed according to their terms, as this court did in its decision on the cross-motions for summary judgment.

Another more important reason for requiring strict compliance with the contract terms in this case is that to permit the use of "tubing" instead of "pipe" when the contract specified "pipe" would be to put the plaintiff in a more advantageous bidding position than other bidders. The plaintiff knew that tubing was much cheaper than pipe and calculated

its bid thereon. If the other bidders calculated their bid based on "pipe," it cannot be denied that plaintiff would be put in a more advantageous position because of the lower cost to it of tubing. True, in this case plaintiff's bid would have been lower than all of the other bids irrespective of the disparity in price between pipe and tubing, but that is not the point. The situation could have been such that the disparity in the prices would have been the only factor that made plaintiff's bid lower than those of the competing bidders. We should not create the opportunity for bidders on Government contracts to underbid their competitors by calculating bids on less expensive materials and later support their bid by saying the materials used conform with the technical requirements of the contract specifications and are not of inferior quality. Specifications are used, at least in one sense, to insure uniformity of bidding. The plaintiff calculated its bid on materials that were less expensive than those called for by the contract; therefore, the contract price must be reduced proportionately.

Likewise, the fact that the Government subsequently permitted the use of the tubing does not entitle the plaintiff to its full contract price. The facts show that on January 14, 1949, the chief of engineers advised that the specifications clearly required the use of brass or copper pipe and did not permit the use of type B copper tubing. However, the contracting officer was requested to order the contractor to proceed with the installation of copper tubing to avoid delay, and to negotiate a change order making a suitable reduction in price, or failing in this, to issue a change order containing an amount which the contracting officer considered a proper deduction in accordance with "Article 3. *Changes*" of the contract. Article 3 provides:

"The contracting officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings and/or specifications of this contract within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. Any claim for adjustment under this article must be asserted within 10 days from the date the change is ordered. Provided, however, That the contracting officer, if he determines that the facts justify such action, may receive and consider, and with the approval of the Secretary of War or his duly authorized representative, adjust any such claim asserted at any time prior to the date of final settlement of the contract. If the parties fail to agree upon the adjustment to be made the dispute shall be determined as provided in Article 15 hereof. But nothing provided in this Article shall excuse the contractor from proceeding with the prosecution of the work so changed."

On March 11, 1949, the contracting officer issued Change Order No. 6, accompanied by his own findings of fact, modifying paragraph 45–15b to permit the use of type B copper tubing. The change order also contained an equitable adjustment downward in the contract price in the amount of $35,184.96. We feel this adequately reflects the disparity in the price of pipe and tubing and that the adjustment was warranted.

We feel that the above sufficiently disposes of the case despite other contentions on both sides which would have no effect on the outcome of the case.

Therefore, we hold that the specifications were not ambiguous, and the fact that the tubing suitably conformed with the functional requirements of the contract specifications does not warrant its use without a reduction in contract price. Plaintiff took a calculated risk when it installed copper tubing instead of pipe as required by the specifications and cannot now complain of the reduction in the contract price.

Plaintiff's petition is therefore dismissed.

JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.

MADDEN, Judge, concurs in the result.